Johnny THOMAS, Trustee For The Bankruptcy Estate Of Donald L. Muennink and Wife, Phylis Muennink, Appellant,

v.

Thomas D. BRACEY, Appellee.

No. 04–96–00402–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 12, 1997.

Robert J. Rothe, Hondo, for appellant.

Thomas D. Bracey, Thomas D. Bracey & Associates, San Antonio, for appellee.

Before RICKHOFF, LÓPEZ and ANGELINI, JJ.

ANGELINI, Justice.

This is an appeal from the granting of summary judgment in a defamation action arising out of an incident that occurred on a piece of property in which appellant claims to have an interest. In four points of error, appellant contends that the trial court erred in granting summary judgment. We affirm the judgment of the trial court.

### Factual and Procedural Background

Appellee, Thomas Bracey, represented Vernor Muennink in his capacity as independent executor of the estate of Leslie Muennink. Leslie Muennink's estate includes a one-half interest in certain property located in Medina County, Texas. Appellant, Donald Muennink[1], owns an undivided one-fourth interest in the same property.

Vernor Muennink, as executor of Leslie Muennink's estate, continued a sharecropping agreement entered into by Leslie Muennink whereby Franklin Muennink farmed the property in question and paid a portion of his earnings to the estate. On November 1, 1994, following several attempts to stop the sharecropping operations, appellant threatened Franklin Muennink's foreman with a gun and demanded that he leave the property. As a result of appellant's conduct, Franklin Muennink has since refused to continue the sharecropping operation.

On November 2, 1994, appellee sent appellant the following letter on behalf of Vernor Muennink:

RE: Trespass on Property of the Estate of Leslie D. Muennink,

Cause No. 5846, County Court at Law of Medina County,

Texas; Our File 307.08.

Dear Mr. Muennink:

As you are aware, I represent Vernor Muennink, in his capacity as the executor of the estate of Leslie D. Muennink. In that connection, Vernor Muennink and his brother Leslie before him for several years

---

1. Donald Muennink and his wife declared bankruptcy during the course of these proceedings. As such, Johnny Thomas, trustee for the estate in bankruptcy, has legal and equitable title to this cause of action. However, for the sake of clarity, Donald Muennink will be referred to as appellant in this opinion.

agreed with Mr. Franklin Muennink to allow sharecropping on land known as the Carter place, and the Home place, which land remains in the name of the decedent and under the control of the decedent's executor.

For several months you have trespassed on the property and inhibited and attempted to prevent farming operations. You have placed a lock on the gate, which will be removed, and, on Monday, October 31, 1994, attempted to run off Mr. Salmon Flores from the property while he was plowing the land. Mr. Salmon Flores, as you know, is employed by Franklin Muennink, the authorized sharecropper.

On Tuesday, November 1, 1994, you again trespassed upon the property and again ran Mr. Flores off the property with use of a pistol.

This letter is to formally demand that you cease and desist trespassing on the property, and stop in any manner inhibiting farming operations on any of the property.

Very truly yours,

/s/ Thomas Bracey

Thomas D. Bracey

A copy of this letter was sent to Deputy August Fisher of the Medina County Sheriff's Department.

As a result of the November 1, 1994, incident, appellant was convicted of aggravated assault with a deadly weapon. This court affirmed the conviction on appeal. On January 4, 1995, appellee sought a declaratory judgment against appellant on behalf of the estate of Leslie Muennink, alleging civil trespass and tortious interference with the sharecropping agreement. This action remains pending. Finally, on February 10, 1995, appellant filed the present suit, seeking to hold appellee liable for the allegedly libelous statements made in the November 2, 1994, letter published to Deputy Fisher. Appellee moved for summary judgment on the ground that the statements at issue were absolutely privileged by the fact that they were made in connection with judicial proceedings. The trial court did not consider appellant's untimely response to appellee's motion and granted summary judgment in appellee's favor.

### Arguments on Appeal

#### A. Summary Judgment

In order to prevail on a motion for summary judgment, a defendant must either prove that no genuine issue of material fact exists, affirmatively disprove at least one element of the plaintiff's cause of action, or prove an affirmative defense as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 127 (Tex.App.—Houston [14th Dist.] 1994, no writ). In any case, the movant bears the burden of proving that he is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). On review, the appellate court must take as true all evidence favoring the nonmovant and indulge every reasonable inference in his favor. *Park Place Hosp. v. Milo*, 909 S.W.2d 508, 510 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984).

Considering the public policy concerns regarding free expression, the Texas Supreme Court has noted that summary judgment may be particularly appropriate in defamation actions. *See Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989). However, the general principles of summary judgment procedure still apply, and a defendant in a defamation action must negate an essential element of the plaintiff's cause of action or conclusively establish all elements of an affirmative defense in order to obtain summary judgment. TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS 153 (1996). Summary judgment may be obtained in a defamation case upon a proven plea of privilege. *Id.*

#### B. Absolute Privilege

Appellee asserts that he is entitled to the defense of absolute privilege because the communication at issue was sent to appellant and a deputy sheriff in connection with and in contemplation of judicial proceedings. It is well-settled that communications made in the course of a judicial proceeding may not serve as the basis of a civil action for libel or slander, regardless of the negligence

or malice with which they are made. *James v. Brown,* 637 S.W.2d 914, 916 (Tex.1982)(citing *Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 166 S.W.2d 909 (1942)). This absolute privilege has been extended to communications made in contemplation of and preliminary to judicial proceedings. *Darrah v. Hinds,* 720 S.W.2d 689, 691 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.); *Russell v. Clark,* 620 S.W.2d 865, 868 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Statements made by judges, jurors, counsel, parties, or witnesses are protected. *Id.* (citing W. PROSSER, HANDBOOK ON THE LAW OF TORTS § 114 (4th ed.1971)).

■ The public policy behind absolute privilege as it relates to attorneys representing clients in a pending or contemplated proceeding was noted by the court in *Russell:*

Public policy demands that attorneys be granted the utmost freedom in their efforts to represent their clients. To grant immunity short of absolute privilege to communications relating to pending or proposed litigation, and thus subject an attorney to liability for defamation, might tend to lessen an attorney's efforts on behalf of his client.

*Russell,* 620 S.W.2d at 868. However, in order for absolute privilege to apply, the communication must bear some relationship to a pending or proposed judicial proceeding in which an attorney is employed, and must be in furtherance of that representation. *Id.* An absolute privilege does not extend to communications made by an attorney outside of judicial proceedings.

■ Appellant urges that appellee is not entitled to claim absolute privilege, but instead must rely on a qualified privilege defense. When a communication of an alleged wrongful act is made to an official authorized to protect the public from such act, that communication is entitled to only a qualified privilege. *Zarate v. Cortinas,* 553 S.W.2d 652, 655 (Tex.Civ.App.—Corpus Christi 1977, no writ). For example, such a qualified privilege arises in cases in which crimes are reported to police authorities. *See, e.g., Vista Chevrolet, Inc. v. Barron,* 698 S.W.2d 435, 437–40 (Tex.App.—Corpus Christi 1985, no writ)(holding report to police that plaintiff had stolen a car only qualifiedly privileged); *Zarate,* 553 S.W.2d at 654–56 (finding complaint filed with sheriff accusing plaintiff of an unauthorized loan of county equipment subject to qualified privilege).

In the present case, appellant recognizes the existence of the absolute privilege enjoyed by those who communicate in the course of judicial proceedings, but asserts that appellee is not entitled to the protection of such privilege because he published his November 2, 1994, letter to Deputy Fisher. Therefore, according to appellant, the communication was made outside of judicial proceedings. Pursuant to *Zarate,* appellant contends that because appellee's letter falsely accused appellant of criminal trespass and was sent to Deputy Fisher, an official authorized to protect the public from such acts, the communication is entitled to only a qualified privilege. Appellee responds by asserting that *Zarate* is not controlling because the communication in question was made in connection with his representation of a client in both pending and prospective judicial proceedings.

■ Whether an alleged defamatory matter is related to a proposed or existing judicial proceeding is a question of law to be determined by the court. *Russell,* 620 S.W.2d at 870. All doubt should be resolved in favor of the communication's relation to the proceeding. *Id.* In this case, the trial court determined that the publication of appellee's letter to Deputy Fisher related to a judicial proceeding and was, therefore, absolutely privileged. We agree.

The first sentence of the letter notified the reader that appellee was communicating in his capacity as the attorney representing Vernor Muennink as the independent executor of Leslie Muennink's estate. The letter also indicated that it was in regard to cause number 5846 in the Medina County Court at Law, the estate administration proceeding. The letter was clearly written in an effort to secure the rights of appellee's client, the executor of the estate, in property and income belonging to the estate. Additionally, appellee's letter contemplated a separate judicial proceeding to enforce the rights of the

estate. Appellee, on behalf of his client, did in fact file suit against appellant for civil trespass and tortious interference with contract following the incident referenced in the letter. As such, the letter was written both in connection with and preliminary to a judicial proceeding.

■ We note that whether appellant had a right to access the land in question by virtue of his undivided one-fourth interest in the property has no bearing on appellee's absolute privilege defense. Appellee's interest in writing the letter was in protecting the rights of his client in ensuring that the best interests of Leslie Muennink's estate were maintained. This included ensuring that the sharecropping operations continued to generate income for the estate until the administration was complete. *See* TEX.PROB.CODE § 238 (Vernon Supp.1997)(stating that the executor is entitled to "carry on the operations of such farm … or cause the same to be done … as shall appear to be for the best of interest of the estate."). In representing his client, appellee had the right to demand that appellant cease his violent interference with the sharecropping operations. The issue of whether appellant had the right to access the property and curtail the sharecropping operation is a legal issue independent of appellee's efforts to serve his client in the administration of the estate. In any event, the absolute privilege afforded an attorney in communications regarding judicial proceedings protects an attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity. RESTATEMENT (SECOND) OF TORTS § 586 cmt. a (1977).

■ Finally, the fact that appellee's letter was published to a law enforcement official has no bearing upon the privilege under the facts of this case. Appellee sent the letter in connection with and in contemplation of judicial proceedings. Even statements aimed at parties not involved in the proceeding are absolutely privileged if they bear some relation to a judicial proceeding. *Odeneal v. Wofford,* 668 S.W.2d 819, 820 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). As such, the communication was absolutely privileged. *See,e.g., James,* 637 S.W.2d at 916–17; *Darrah,* 720 S.W.2d at 692–93; *Odeneal,* 668 S.W.2d at 820; *Russell,* 620 S.W.2d at 868–70.

Because appellee conclusively established his right to the affirmative defense of absolute privilege, we conclude that the trial court did not err in granting summary judgment in appellee's favor. The judgment of the trial court is affirmed.