In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00053-CR**
_____

**JOHN WILLIAM MILLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-04-05053-CR**
_____

**OPINION**

In three issues, John William Miller appeals his conviction for the online

solicitation of a minor, a second-degree felony. *See* Tex. Penal Code Ann. §

33.021(c), (f) (West 2016). Miller argues (1) the evidence is insufficient to support

his conviction, (2) the trial court abused its discretion in allowing one of the State's

witnesses to speculate as to Miller's intent and guilt, and (3) the trial court erred in

denying a motion to suppress his recorded interview, because he allegedly did not

1

waive his rights before speaking with the police. We conclude none of Miller's issues have merit and affirm the trial court's judgment.

## Background

Conroe Police Detective Jeffery Nichols, assigned to the Internet Crimes Against Children task force, posed as a minor female by the name of "Hailey Jones." As Hailey, Nichols posted an ad on a website inviting potential responders to message her if they liked "younger girls" and wanted "to do something fun." Miller responded to Hailey's ad by asking how old she was and telling her he was 31 years old. Hailey responded that she was 14 years old. The two messaged each other, and Miller's messages contained sexually explicit content. Miller also inquired about having sex with Hailey. During this conversation, Hailey asked Miller about contraceptives and advised she did not want to become pregnant at 14 years of age. Miller sent Hailey a picture of himself, and Detective Nichols sent a picture of another officer that had been altered for the task force's use in solicitation cases. In response to the photo, Miller stated, "You look very good not that young." As the conversation continued, Hailey asked for Miller's cell phone number, so they could text message instead of messaging through the website. Miller attempted to verify Hailey was not a police officer by asking her to tell him the current weather; Hailey responded correctly, and Miller provided his cell number.

2

Miller and Hailey's conversation then continued via text. Miller requested a location they could meet, and Hailey provided an address. After saying he was ten minutes away and he hoped they would not get caught, Miller described his car to Hailey. Detective Nichols and other investigators were on scene of the given address. They observed a car matching the description Miller provided to Hailey, and another officer was directed to stop Miller. When they stopped Miller, he had the cell phone used to communicate with Hailey in his possession. Miller also had condoms, which Hailey discussed during her conversation with Miller. Detective Nichols then detained and interviewed Miller at the scene.

The interview was recorded and played for the jury. During the interview, Miller acknowledged he messaged Hailey, Hailey stated she was 14 years old, and he traveled to the location she provided to meet her to hopefully have sex. Nevertheless, Miller claimed he did not believe Hailey was really a minor; but rather, a young adult female engaging in role-play with him. Following the interview, Detective Nichols arrested Miller and took him to jail. Detective Nichols opined that Miller, under the circumstances of this case, intended to meet a 14-year-old girl and engage in sexual conduct with her rather than engage in a role-play fantasy as he claimed.

During cross-examination, Detective Nichols affirmed the website where he posted Hailey's ad is not intended for adults to use to meet minors, rather it was designed for adults. Detective Nichols also explained he intentionally used incorrect grammar in his communications with Miller to mimic the way children ordinarily text one another.

Miller testified in his own defense and maintained he never intended to meet a minor; but rather, thought he was role-playing with an adult. Miller claimed the website where he responded to Hailey's ad requires the person posting be an adult. Miller explained in his experience with this website, role-playing, including adults pretending to be minors, is common. Miller said even though Hailey said she was only 14 years old, he believed Hailey's ad was from an adult, "in their twenties or so[,]" because of her reference to certain cartoon characters, as well as her vocabulary and use of full sentences. Miller specifically claimed the "facial features" of the picture Detective Nichols provided looked like someone "about 22, 23." Miller then stated though, he thought he could be meeting someone in their 30s because older women often post photos taken when they were younger. As to the message from Hailey regarding birth control and not wanting to be "14 and preggers[,]" Miller said he believed this to be another indication Hailey was not a minor. Miller explained because the popular television show is not titled "14 and

4

preggers," and "preggers" is not used by most people in normal conversations, he concluded Hailey was role-playing. Miller also said he asked some of the questions to ensure he was not communicating with "a bot."[1] Miller also admitted he had no way of knowing for sure whether Hailey was an adult or 14 years old as she claimed. He conceded it was possible for a 14-year-old girl to be there when he arrived.

The jury convicted Miller of the offense of online solicitation of a minor. *See* Tex. Penal Code Ann. § 33.021(c). The trial court assessed Miller's punishment at ten years in prison but suspended his sentence and placed him on community supervision for ten years based on the jury's sentence and recommendation for community supervision. Miller appealed, bringing three issues for review. We address his issues as he presented them in his appellate brief.

## Sufficiency of the Evidence

Miller argues in his first issue the evidence is insufficient to support his conviction for the online solicitation of a minor. *See id.* Specifically, Miller contends the evidence fails to show he intended to solicit a minor, rather he claims he was engaged in "role playing" with someone he believed to be an adult.

When evaluating the legal sufficiency of the evidence, we review all evidence in the light most favorable to the verdict to determine whether any rational factfinder

---

[1] This was a reference to a robot or computer system that generates ads.

5

could find the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the ultimate authority on the credibility of the witnesses and the weight to be given to their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). A reviewing court must give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* at 16–17. Additionally, courts must bear in mind "direct and circumstantial evidence are treated equally[,]" and "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and can be sufficient on its own to establish guilt. *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). In reviewing the legal sufficiency of the evidence supporting a conviction, we consider "*all* evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted." *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd) (emphasis added).

6

A person commits the offense of online solicitation of a minor if, "over the Internet, by electronic mail[,] or text message[,] . . . knowingly solicits a minor to meet . . . with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse[.]" Tex. Penal Code Ann. § 33.021(c). A "minor" includes "an individual whom the actor believes to be younger than 17 years of age." *Id.* § 33.021(a)(1)(B) (West 2016).

Messages between Miller and Hailey admitted into evidence indicated that despite Hailey's stated age of 14, Miller wanted to meet her to engage in sexual intercourse and other sexual activity. Detective Nichols testified police found condoms and the phone Miller used to converse with Hailey in his car when police stopped and detained him near the location where Hailey and Miller agreed to meet. Nevertheless, during his interview after being detained, at trial and on appeal, Miller maintains he believed they were engaged in role-playing and she was an adult. The jury may choose to believe or not to believe any witness or any part of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (citing *Esquivel v. State*, 506 S.W.2d 613 (Tex. Crim. App. 1974)); *see also Maloney v. State*, 294 S.W.3d 613, 619 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (affirming the conviction of defendant for the online solicitation of a minor where defendant claimed he was role-playing with an alleged 13-year-old, an undercover

7

officer, who he planned to meet for sex). The jury is the sole judge of credibility of the witnesses. *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict, we disagree with Miller's contention that no reasonable jury could have found him guilty of the online solicitation of a minor. Accordingly, we hold the evidence is sufficient to support Miller's conviction. We overrule his first issue.

## Admission of Opinion Testimony

Miller asserts the trial court erroneously allowed the State, over his objection, to elicit Detective Nichols's opinion regarding Miller's intent. Specifically, Miller complains about the following exchange:

| [State:] | So after reviewing all the communications, conducting the interview, did you believe it was his intent to meet a minor online for sex? |
|---|---|
| [Miller:] | Objection, Your Honor; speculation. |
| THE COURT: | I will allow that question. Overruled. You may answer. |
| [Nichols:] | Yes, I believe it was his intent to meet a 14-year-old girl and engage in sexual conduct. |

The State argues Rules 602 and 701 of the Texas Rules of Evidence allows for the admission of Detective Nichols's opinion in this case. Tex. R. Evid. 602, 701. We review a trial court's decision to admit or exclude evidence for an abuse of

8

discretion. *See Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). We will not reverse the trial court's ruling unless the record demonstrates a clear abuse of discretion—the decision is so clearly wrong as to lie outside the zone within which reasonable persons may disagree. *See Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

Texas Rules of Evidence 602 and 701 apply when a party objects claiming testimony is speculative. *See* Tex. R. Evid. 602, 701; *Solomon v. State*, 49 S.W.3d 356, 364 (Tex. Crim. App. 2001); *Turro v. State*, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref'd). Rule 602 requires that a witness have personal knowledge of the matter on which he or she is testifying. *See* Tex. R. Evid. 602. Rule 701 concerns lay witness opinion testimony, allowing the declarant to express opinions when the opinion is based on the witness's perception and is helpful to the jury's understanding of the witness's testimony or to the jury's determination of a fact at issue in the case. *See* Tex. R. Evid. 701; *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) (citing *Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997)).

The first prong of Rule 701 requires a witness rationally base his or her testimony on what he or she perceives. *See* Tex. R. Evid. 701; *Solomon*, 49 S.W.3d

9

at 364–65; *Fairow*, 943 S.W.2d at 898. The personal knowledge of the events which forms the basis of the witness's opinion may come directly from what the witness sees, hears, or smells, or otherwise from the witness's experience. *Osbourn*, 92 S.W.3d at 535; *Fairow*, 943 S.W.2d at 898. An opinion is rationally based on a witness's perception if the opinion is one a reasonable person could have drawn under the circumstances. *Fairow*, 943 S.W.2d at 900.

The second prong of Rule 701 requires the witness's opinion be helpful to the trier of fact. *See* Tex. R. Evid. 701; *Solomon*, 49 S.W.3d at 364–65. "This consideration is especially prudent when the opinion concerns culpable mental state." *Fairow*, 943 S.W.2d at 900. There is no "bright line" test indicating when an opinion is helpful. *Id.*

Detective Nichols, acting as Hailey, engaged in a conversation with Miller regarding what Miller was interested in doing when they met. This communication continued until Miller was detained by police. Then, Detective Nichols interviewed Miller. Moreover, the State had Detective Nichols explain his experience in these types of cases as a member of a special task force targeting online solicitation of minors. Thus, the State established the predicate that Detective Nichols had personal knowledge of the events upon which his testimony was based. *See id.* at 898–99; *see also* Tex. R. Evid. 701. A reasonable person communicating with Miller under the

10

same circumstances could draw the conclusion Miller was interested in having sex with Hailey, despite her stated age of 14. *See Fairow*, 943 S.W.2d at 900.

Next, under Rule 701, the witness's testimony must be helpful to the jury. *Solomon*, 49 S.W.3d at 364. Testimony is helpful when it either assists the jury to understand the witness's testimony or to understand a fact issue. *Fairow*, 943 S.W.2d at 900. The decision regarding admissibility is committed to the sound discretion of the trial court. *Id.* at 901. It is likely, given Detective Nichols's training and experience in dealing with online solicitation cases, as well as his direct involvement with this case, Detective Nichols's opinion of his perception as to what Miller was thinking was helpful in assisting the jury to understand a fact in issue in the case. *See Osbourn*, 92 S.W.3d at 535 (explaining a witness's testimony can include opinions, beliefs, or inferences if they are drawn from his or her own experiences and observations). The trial court did not abuse its discretion by allowing Detective Nichols to provide opinion testimony. We overrule Miller's second issue.

**Denial of Motion to Suppress Statement**

In Miller's third issue, he complains the trial court erred when it failed to suppress his recorded statement because the statement was not made in compliance with article 38.22 and he was not expressly asked whether he waived his constitutional rights. Tex. Code Crim. Proc. Ann. art. 38.22 § 3 (West 2018).

11

We review a trial court's ruling refusing to suppress evidence for an abuse of discretion. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008). In reviewing the trial court's decision, we review the evidence in the light most favorable to the trial court's ruling. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts, but review *de novo* the trial court's application of the law to those facts. *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (citing *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997)). The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos*, 245 S.W.3d at 418.

Prior to the beginning of trial, Miller moved to suppress his statement given to Officer Nichols during an interview just prior to his arrest. Miller claims that he did not voluntarily waive his rights; and thus, his statement was inadmissible and should be suppressed. *See* Tex. Code Crim. Proc. Ann. art. 38.22 § 3(a)(2). At the hearing on Miller's motion to suppress, the State argued Miller was not in custody when he agreed to the interview; however, on appeal, the State does not argue that point. Thus, we presume for purposes of this appeal that Miller was in custody when he provided his statement. Regardless of whether Miller was in custody when he

12

provided his statement, the State contended at the hearing and on appeal that Miller voluntarily waived his rights and willingly answered Officer Nichols's questions. We agree.

Under article 38.22 of the Texas Code of Criminal Procedure, an oral statement made as the result of a custodial interrogation is not admissible against a defendant unless that statement meets certain criteria. *See id.* § 3. In addition to being informed of his *Miranda* rights during the recording, article 38.22 also requires a defendant "prior to the statement but during the recording . . . knowingly, intelligently, and voluntarily" waive his rights. *Id.* § 3(a)(2); *see id.* § 2(a) (West 2018); *see also Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

The State has the burden of proving by a preponderance of the evidence that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Colorado v. Connelly*, 479 U.S. 157, 168–170 (1986); *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). Although we will not presume a valid waiver from the accused's silence after being warned, or from the fact the accused eventually confesses, we can in some cases infer waiver from the actions and words of the person interrogated. *North Carolina v Butler*, 441 U.S. 369, 373 (1979); *Joseph*, 309 S.W.3d at 24. The United States Supreme Court has articulated the following test in evaluating whether an accused's waiver is knowing, voluntary, and intelligent:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citations omitted); *Joseph*, 309 S.W.3d at 25–27 (applying the test to issue of waiver under both *Miranda* and article 38.22); *see also Leza v. State*, 351 S.W.3d 344, 349–50, 52 (Tex. Crim. App. 2011). "The 'totality-of-the-circumstances approach' requires the consideration of 'all the circumstances surrounding the interrogation,' including the defendant's experience, background, and conduct." *Joseph*, 309 S.W.3d at 25 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010). Simplified, "a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Id.* at 388–89.

The evidence shows the police did not obtain Miller's statement by intimidation, coercion, or deception. Officer Nichols read Miller his rights in a

14

measured and clear manner and asked Miller if he understood his rights. Miller affirmed he understood his rights and began answering Officer Nichols's questions. Miller did initially ask whether he was being processed, and Officer Nichols said no, they were just talking. This occurred prior to Officer Nichols reading Miller his rights and Miller's acknowledgment that he understood those rights. At no time did Miller either request to speak with an attorney or terminate the interview. Rather, he willingly answered the questions and explained his side of the story. Throughout the entire interview, Miller appears appropriately responsive to Officer Nichols's questions.

The warnings read to Miller made him fully aware of the rights set forth in the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22 § 2(a). Therefore, we conclude the totality of the circumstances surrounding Miller's interview shows he made his waiver with full awareness of both the rights being abandoned and the consequences of his decision to abandon those rights. *See Moran*, 475 U.S. at 421; *Joseph*, 309 S.W.3d at 24. Our review of the record, including the audio recording of Miller's interview, does not support the contention Miller was coerced into making a statement. Therefore, the totality of the circumstances surrounding Miller's interview shows he voluntarily waived his rights, and his waiver was a result of a deliberate choice free from intimidation, coercion, or

15

deception. Accordingly, we conclude the trial court did not err by denying Miller's motion to suppress. We overrule Miller's third issue.

Having overruled all of Miller's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on June 5, 2018
Opinion Delivered November 14, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.